DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| ERIC CARDONA-COLÓN, )<br>)<br>Petitioner, )<br>v. )<br>)<br>U.S. CITIZENSHIP AND IMMIGRATION )<br>SERVICES DIRECTOR; CBP PORT )<br>DIRECTOR, )<br>)<br>Respondents. )<br>_____) | Civil Action No. 2017-0040 |

**Attorneys:**
**Eugenio W.A. Geigel-Simounet, Esq.,**
St. Croix, U.S.V.I.
    *For Petitioner*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
    *For Respondents*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

    THIS MATTER comes before the Court on the "Motion to Dismiss" (Dkt. No. 6) filed by Respondent U.S. Citizenship and Immigration Services Director ("USCIS Director") and Respondent Customs and Border Protection Port Director for St. Croix, U.S. Virgin Islands ("CBP Port Director") seeking to dismiss Petitioner Eric Cardona-Colón's ("Petitioner") Petition for Writ of Mandamus ("Petition"). Additionally, before the Court is Petitioner's "Motion for Extension of Time to Serve the United States Pursuant [to] FRCP 4(i) and 4(m)" (Dkt. No. 11).

    For the reasons discussed below, the Court will grant Respondents' Motion to Dismiss as to the USCIS Director for lack of subject matter jurisdiction. Further, the Court will grant Respondents' Motion to Dismiss as to the CBP Port Director for failure to state a claim on the grounds that the Administrative Procedure Act ("APA") provides an adequate alternative

1

remedy. However, the Court will allow Petitioner an opportunity to amend his Petition and will grant his Motion for Extension of Time to Serve the United States.

## I. BACKGROUND

Petitioner works for a private employer at the Henry Rohlsen Airport on St. Croix, Virgin Islands. In order to perform his duties, he requires "an airport security seal" to access certain secure areas in the airport. (Dkt. No. 1 at ¶¶ 3-5).

On March 11, 2016, the CBP Port Director revoked Petitioner's airport security seal. (Dkt. No. 1 at ¶ 7). The letter revoking Petitioner's security seal states in relevant part:

> This letter is to inform you that your airport security seal access has been revoked in accordance to 19 CFR 122.187(a)(2)(iii) and 19 CFR 122.183(4)(xxxvii). After re-vetting the application, 19 CFR 122.183(a)(6) reveals that a complete background check or investigation was not completed and the violations of 19 USC 1305 and 19 USC 1497, do[] not permit you to have unescorted access to Secured Areas at the airport.

(Dkt. No. 1-2). The letter further states that Petitioner could appeal the decision and request a hearing within 10 days of receiving the notice of revocation under 19 C.F.R. § 122.183(c). *Id.* Additionally, the letter states that if Petitioner appealed, "[t]he Port Director will render his decision on the appeal in writing within 30 days of the notice of appeal." *Id.*

Petitioner filed an appeal on March 16, 2016 in which he requested a hearing. (Dkt. Nos. 1 at ¶ 10; 1-3). A hearing was held on March 17, 2016. (Dkt. No. 1 at ¶ 11). Petitioner alleges that at the hearing he "was never given an opportunity to defend himself as to the cancelation of his security pass; nor was he provided an opportunity to defend himself from the alleged charges." *Id.*

On March 23, 2016, Petitioner, now through counsel, wrote to the CBP Port Director requesting that the "hearing be reopened." (Dkt. Nos. 1 at ¶ 12; 1-4 at 1). Having received no reply, Petitioner, through counsel, again wrote to the CBP Port Director on May 4, 2016. (Dkt. Nos. 1 at ¶ 13; 1-5).

On June 3, 2016, Petitioner received a letter from Marcelino Borges, Director of Field Operations in San Juan, Puerto Rico. (Dkt. No. 1 at ¶ 14). The letter states, in pertinent part:

> After careful review, I must inform you that I am upholding the Port Director's decision and that a hearing will not be held.
>
> After careful consideration, I have determined that your continued CBP security access poses an unacceptable security risk to the Customs area 19 C.F.R. § 122.187(a)(i). Your access was properly revoked pursuant to 19 C.F.R. [§] 122.187(a)(2), because you committed an act involving a disqualifying offense listed in 19 C.F.R. § 122.83(a)(4) related to a violation of Customs law (ex. 19 U.S.C. § 1305). A hearing will not be held because there is no genuine issue of fact that is material to the revocation.
>
> This is the final administrative action as to the revocation.

(Dkt. No. 1-6).

On July 11, 2016 Petitioner filed an appeal using Form I-290B for the Department of Homeland Security, U.S. Citizenship and Immigration Services. (Dkt. Nos. 1 at ¶ 16; 1-7). The appeal was rejected noting that the incorrect form was used for this type of appeal. (Dkt. Nos. 1 at ¶ 17; 1-8). Petitioner then wrote to the Transportation Security Administrator Peter Neffenger about the matter and requested an extension of the appeal process. (Dkt. Nos. 1 at ¶ 19; 1-9). The Transportation Security Administration then forwarded the letter on September 22, 2016 to Mr. Ronald Alkinson of U.S. Citizenship and Immigration Services, stating that "[a]fter careful review, we have determined that this issue falls within the purview of U.S. Citizenship and Immigration Services." (Dkt. Nos. 1-10; 1 at ¶ 20). Petitioner wrote to follow up with Mr. Alkinson on September 27, 2016 and additionally on April 27, 2017. (Dkt. Nos. 1 at ¶¶ 21-22; 1-11; 1-12). On May 5, 2017, Petitioner's counsel received an email from the Customer Assistance Unit at U.S. Citizenship and Immigration Services stating the they had received his inquiry and that they would respond in 30 business days. (Dkt. Nos. 1 at ¶ 23; 1-13). Petitioner never received a response. (Dkt. No. 1 at ¶ 23).

Petitioner then filed this Petition requesting that the Court "issue a Mandamus against Respondents so they rule on the basis for the denial of the unescorted access seal as well as to act pursuant to CFR § 122.183 (c) and (d) and grant him his right to appeal or in the alternative they should immediately revoke their finding and return his access pass to him." (Dkt. No. 1 at 7).

Through their Motion to Dismiss (Dkt. No. 6) and accompanying Memorandum of Law (Dkt. No. 7), Respondents move pursuant to Fed. R. Civ. P. 12(b)(1), (b)(4), (b)(5) and (b)(6) to dismiss the Petition for lack of subject matter jurisdiction, insufficient process, insufficiency of service of process, and failure to state a claim upon which relief may be granted. (Dkt. No. 6 at 1). Respondents included with their Motion to Dismiss an affidavit from the CBP Port Director presenting additional facts to the Court. (Dkt. No. 7-1). Specifically, the CBP Port Director states that in March 2014—prior to the events at issue in this action—Petitioner had applied for an access seal but was rejected pursuant to 19 C.F.R. § 122.183(a)(2) and (a)(4) on the grounds that he had previously attempted to commit a disqualifying offense. (Dkt. 7-1 at ¶ 6). According to the CBP Port Director, the disqualifying offense occurred in May 2013 when CBP officers discovered a backpack full of lottery tickets during an inspection of an outbound flight from St. Croix to Puerto Rico. *Id.* at ¶ 7. Petitioner told CBP officers that the backpack belonged to him. *Id.* Under 19 U.S.C. § 1305, it is illegal to import lottery tickets from the Virgin Islands to the United States, including Puerto Rico. However, Petitioner was not criminally charged for the offense. *Id.* In 2015, when Petitioner reapplied for an access seal, "CBP in St. Croix mistakenly approved the request and issued [Petitioner] a CBP access seal." *Id.* at ¶ 8. In March 2016 during an audit of CBP access seals, "CBP in St. Croix identified the error and realized that the seal should have never been issued." *Id.* at ¶ 9. The CBP Port Director states that the justification for

4

the revocation of Petitioner's access seal was Petitioner's attempt in 2013 to illegally import lottery tickets. *Id.* at ¶ 19.

Petitioner filed his Opposition to Respondent's Motion Dismiss (Dkt. No. 12), and a "Motion for Extension of Time to Serve the United States Pursuant [to] FRCP 4(i) and 4(m)." (Dkt. No. 11). Respondents did not file an Opposition to the Motion for Extension of Time.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.   Subject Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. An attack under Rule 12(b)(1) to a court's subject matter jurisdiction can be either a facial or factual attack. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial attack—as it is denominated—challenges the sufficiency of the jurisdictional allegations in the complaint on their face. *Petruska v. Gannon University*, 462 F.3d 294, 302, n.3 (3d Cir. 2006). In contrast, a factual attack disputes "the factual allegations underlying the complaint's assertion of jurisdiction," and involves the presentation of competing facts. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack requires that a court "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc.*, 220 F.3d at 176. On the other hand, a court may consider evidence beyond the complaint in reviewing a factual attack. *Id.* In so doing, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "no presumptive truthfulness attaches to plaintiff's allegations." *Mortensen,* 549 F.2d at 891.

### B.    Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Third Circuit, as articulated in *Connelly v. Lane Const. Corp.*, employs a three-step process in applying the analysis established by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a motion under Rule 12(b)(6):

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (internal citations omitted). *See also Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), courts accept a plaintiff's "factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff.") (internal quotation and citation omitted).

At the Rule 12(b)(6) stage, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (internal citations omitted).

C.     **Insufficient Process and Insufficient Service of Process**

Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) permit a district court to dismiss an action for insufficient process and insufficient service of process. "Under Rule 12(b)(4), a defendant may attack the substance and form of a summons; whereas, under Rule 12(b)(5), a defendant may attack the manner in which a summons and complaint were, or were not, served." *Oliver v. V.I. Bureau of Internal Revenue*, Civil Action No. 2016-0031, 2020 U.S. Dist. LEXIS 101630, at *2-3 (D.V.I. June 10, 2020). The party responsible for service bears the burden of proving sufficient service of process. *See Sims v. City of Phila*, 552 Fed. App'x 175, 177 (3d Cir. 2014) (citing *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc*., 988 F.2d 476, 488 (3d Cir. 1993)).

Fed. R. Civ. P. 4(i) governs the method of service on the United States and its agencies. Proper service under the rule requires service of the summons and complaint on both the United States Attorney for the appropriate district and the Attorney General of the United States.

Service of the summons and complaint must be completed within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m). If a plaintiff fails to serve a defendant within those 90 days, a court must extend the time for service upon a showing of good cause. *Id.*; *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecomms. Corp. v. Teleconcepts Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (internal citations and quotations omitted). Even in the absence of a showing of good cause, a court "may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli*, 46 F.3d at 1305. In exercising this discretion, a court can look to several factors, including: (1) actual notice of the

legal action; (2) prejudice to the defendant; (3) the statute of limitations on the underlying cause of action; (4) the conduct of the defendant; (5) whether the plaintiff is represented by counsel; and (6) any other additional factors that may be relevant. *See Chiang v. United States SBA*, 331 F. App'x 113, 116 (3d Cir. 2009). These factors are considered in light of the Third Circuit's "preference that cases be disposed of on the merits whenever practicable." *Anderson v. Mercer County Sheriff's Dep't*, Civil Action No. 11-cv-7620 (JAP), 2014 U.S. Dist. LEXIS 71776, at *13 (D.N.J. May 27, 2014) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

Respondents have made a factual attack on the ability of the Court to exercise subject matter jurisdiction over this matter as they have submitted a sworn declaration of facts (Dkt. No. 7-1) in support of their Motion to Dismiss. *See International Asso. of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982) ("[Defendant's] motion was supported by a sworn statement of facts. It therefore must be construed as a factual, rather than a facial attack on the court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)."). Therefore, the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. . . . [N]o presumptive truthfulness attaches to plaintiff's allegations." *Mortensen*, 549 F.2d at 891.

##### 1. Respondent CBP Port Director

As to the CBP Port Director, Respondents argue the Court lacks subject matter jurisdiction, "because district courts lack jurisdiction to review the merits of a decision regarding the denial of a security clearance; a matter left to the discretion of the executive branch of government." (Dkt. No. 7 at 12). Respondents further argue that "the decision was made within

the discretionary authority afforded the CBP Port Director pursuant to regulations, and was not arbitrary and capricious." *Id.* at 2.

The Court agrees with Respondents that as a general rule "federal courts lack jurisdiction to review the merits of security clearance." *Stehney v. Perry*, 907 F. Supp. 806, 817 (D.N.J. 1995) (citing *Webster v. Doe*, 486 U.S. 592 (1988)), *aff'd* 101 F.3d 925 (3d Cir. 1996); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990). However, the Supreme Court and Third Circuit have acknowledged that courts may review whether an agency followed its own regulations and procedures—even in making discretionary decisions and in relation to security clearances. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Webster v. Doe,* 486 U.S. 592**,** 602 n.7 (1988); *Service v. Dulles*, 354 U.S. 363 (1957); *Vitarelli v. Seaton*, 359 U.S. 535 (1959); *Stehney v. Perry*, 101 F.3d 925, 932 (3d Cir. 1996) (finding plaintiff "present[ed] a justiciable claim" when she sought "review of whether NSA complied with its own regulations or violated her constitutional rights" in denying her a security clearance).

Under this so-called *Accardi* doctrine, a court may set aside agency action when not in compliance with its regulations or internal procedures, even when those procedures are not required by the Constitution or a statute. *See Leslie v. AG of the United States*, 611 F.3d 171, 175-80 (3d Cir. 2010); *see also United States v. Caceres*, 440 U.S. 741, 759 (1979) (Marshall, J., dissenting) (The Supreme Court "has consistently demanded governmental compliance with regulations designed to safeguard individual interests even when the rules were not mandated by the Constitution or federal statute.").

While not all violations of procedural rules will invalidate agency action, courts have found that compliance with an agency's own rules is especially important in the context of protecting individual rights. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of

9

individuals are affected, it is incumbent upon agencies to follow their own procedures."); *Leslie*, 611 F.3d at 175 ("[R]ules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency.").

Title 19 C.F.R. § 122.187 is the Customs regulation that governs the revocation and suspension of access to security areas. It prescribes the procedure to be used when revoking or suspending such access and outlines the specific grounds for revocation. Under 19 C.F.R. § 122.187(a)(2), grounds for revocation or suspension of a Customs access seal include offenses listed in 19 C.F.R. § 122.183, which governs denials of access seals. These regulations are vital for the protection of the rights of employees subject to Customs regulations, and therefore are the type of regulations that courts enforce under *Accardi*. Indeed, *Accardi* claims have been allowed to proceed against Customs for alleged violations of 19 C.F.R. §§ 122.187 and 122.183 in the revocation and denial of access seals. *See Hickey-McAllister v. British Airways*, 978 F. Supp. 133, 141 (E.D.N.Y. 1997) ("[A]s Section 122.187 is clearly a regulation which significantly affects plaintiff's rights and interests, the Accardi doctrine applies."); *Rodriguez v. United States*, No. CV-17-01200-PHX-NVW, 2018 U.S. Dist. LEXIS 96535 (D. Ariz. June 8, 2018) (plaintiff sufficiently alleged claims under *Accardi* and the APA for denial of a Customs security clearance that was not in compliance with 19 C.F.R. § 122.183). Accordingly, although judicial review of the "merits of a decision regarding the denial of a security clearance" may be improper (Dkt. No. 7 at 12), judicial review is permissible to assess agency compliance with its regulations and procedures.

Here, Petitioner alleges procedural irregularities in the revocation of his security clearance, including that he was denied his right to appeal. (Dkt. No. 1 at 6-7). Under the *Accardi* doctrine, the Court has jurisdiction over these claims. *See Rodriguez*, 2018 U.S. Dist. LEXIS

96535, at *7 (*"*Federal question subject matter jurisdiction lies in this case under 28 U.S.C. § 1331 because the Amended Complaint is pleaded . . . for the agency's failure to follow its own regulation, 19 C.F.R. § 122.183(b). . . . [T]he claims [] arise under federal law."*)*.

As Petitioner presents claims that the Court may review, the Court next addresses whether the Court may grant the relief sought—a writ of mandamus. Under 28 U.S.C. § 1361 "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[1] "[R]elief is available to a plaintiff under Section 1361 'only if he has exhausted all other avenues of relief and only if the defendant owes him a clear, nondiscretionary duty.'" *Harmon Cove Condominium Asso. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). Additionally, "a plaintiff must allege that an officer of the Government owes him a legal duty which is a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.' An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt." *Id.* (quoting *Richardson v. United States*, 465 F.2d 844, 849 (3d Cir. 1972) (en banc) (citations omitted), *rev'd on other grounds*, 418 U.S. 166 (1974)).

---

[1] Petitioner also relies on the All Writs Act, 28 U.S.C. § 1651 for this Court's authority to issue a writ of mandamus. (Dkt. No. 1 at ¶ 1). However, "[t]raditionally, the writ of mandamus [under 28 U.S.C. § 1651] has been used 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *In re Chambers Dev. Co.*, 148 F.3d 214, 223 (3d Cir. 1998) (quoting *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661 (1978)). "[J]urisdiction to issue writs of mandamus under 28 U.S.C. § 1651 lies in cases in which potential appellate jurisdiction exists." *In re Richards*, 213 F.3d 773, 779 (3d Cir. 2000). This Court has no such appellate jurisdiction; therefore, 28 U.S.C. § 1651 is not the appropriate statute to invoke the Court's power to issue a writ of mandamus under the circumstances here.

The question before the Court is, therefore, whether 19 C.F.R. § 122.187 commands duties by the CBP Port Director to Petitioner that are non-discretionary and ministerial.[2] The Court notes that, while 19 C.F.R. § 122.187 provides for certain decisions to be within the discretion or judgment of the CBP Port Director,[3] the regulations also require that CBP and the Port Director utilize certain procedures during the revocation process. For example, 19 C.F.R. § 122.187(b)(1) lays out the requirements that the notification of revocation must meet, including "stat[ing] the specific grounds for immediate revocation or suspension . . . and advis[ing] the employee that he may choose to pursue one [of several outlined options]." Further, if a hearing is

---

[2] Courts have disagreed on whether a motion to dismiss a claim for mandamus relief is properly brought under Fed. R. Civ. P. 12(b)(1) or 12(b)(6). *See* 14 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 3655 (4th ed. 2020) ("A recurring question under Section 1361 is whether the defendant's motion to dismiss goes to a defect in subject matter jurisdiction or to a failure to state a claim. As many lower courts have recognized, whether jurisdiction exists under Section 1361 'is intertwined with the merits' because the existence of a legal duty owed to the plaintiff is critical to whether adjudicative power is present. Some courts have treated the question as a matter of the merits; others have treated the question as a matter of jurisdiction.") (internal citations omitted).

A panel of the Third Circuit has treated the issue of whether there is a mandatory duty as one of jurisdiction. *See Soobzokov v. Attorney Gen. of U.S.*, 515 F. App'x 98, 101 (3d Cir. 2013) (finding in the context of a challenge to prosecutorial discretion "the District Court correctly concluded that it lacked jurisdiction to provide the relief sought"); *see also Alvarez v. Raufer*, Civil Action No. 19-3155, 2020 WL 1233565, at *2 (E.D. Pa. Mar. 12, 2020) ("Courts in our jurisdiction that have squarely addressed similar claims treat part of the analysis as a jurisdictional one appropriate for a Rule 12(b)(1) motion and other parts of the analysis as appropriate for a Rule 12(b)(6) motion. Specifically, Courts tend to treat as jurisdictional the issue of whether Defendants have a nondiscretionary duty."); *Assadzadeh v. Mueller*, Civil Action No. 07-2676, 2007 WL 3252771, at *5 (E.D. Pa. Oct. 31, 2007) ("Because Defendants have a mandatory duty to process naturalization applications within a reasonable time, this Court has jurisdiction over Plaintiff's APA and mandamus claims.").

[3] For example, while 19 C.F.R. § 122.187(a)(1)(i) states that the port director "[m]ust immediately revoke or suspend employee's access to the Customs security area" for any of the specified grounds under 19 C.F.R. § 122.187(a)(2), revocation or suspension may otherwise be proposed when "*in the judgment of the port director*, it appears . . . that continued access might pose an unacceptable risk." *See* 19 C.F.R. § 122.187(a)(1)(ii) (emphasis added).

held, 19 C.F.R. § 122.187(d) specifies the required procedure. Because the CBP Port Director owes Petitioner the non-discretionary procedural duties outlined in 19 C.F.R. § 122.187, the Court has subject matter jurisdiction over this matter as to the CBP Port Director.

### 2. Respondent USCIS Director

Respondents also argue that this Court lacks subject matter jurisdiction because the USCIS Director lacked "authority or jurisdiction to accept and hear Petitioner's appeal . . . regarding the revocation of Petitioner's access seal by the CBP Port Director on March 11, 2016." (Dkt. No. 7 at 11). Respondents argue that, without this authority, there could not be a "compelling duty that the USCIS Director [was] failing to fulfill" allowing for mandamus relief. *Id.* at 11-12.

While Petitioner was told that the issue "falls within the purview of U.S. Citizenship and Immigration Services" (Dkt. Nos. 1 at ¶ 20; 1-10), there is no indication in the record and Petitioner has not pointed the Court to any legal source for Respondent USCIS Director's ability to review the decision to revoke Petitioner's security access seal or implement the procedures required under the regulations governing revocation, 19 C.F.R. § 122.187. Generally, Customs' regulations are issued under the authority of the Department of Treasury and Department of Homeland Security. 19 C.F.R. §§ 0.1 and 0.2. Regarding revocation of a security access seal, 19 C.F.R. § 122.187 grants power to revoke or suspend security access to *the port director*, 19 C.F.R. § 122.187(a)(1); provides that the written notice of revocation or suspension is the responsibility of *the port director*, 19 C.F.R. § 122.187(b); and grants the responsibility for handling the appeal to *the port director*, 19 C.F.R. § 122.187(c). If a hearing is held, the Commissioner of Customs and Border Protection designates the hearing officer who makes a recommendation on the merits. 19 C.F.R. §§ 122.187(d)-(f); 19 C.F.R. § 101.1. A decision on

any appeal, whether a hearing is held or not, is performed by CBP's director of field operations, whose decision then constitutes "final administrative action on the matter." 19 C.F.R. §§ 122.187(c)(2)(ii), (c)(3), and (f).

Petitioner has not identified any "duty owed to the plaintiff" by the USCIS Director that the Court may compel via a writ of mandamus under 28 U.S.C. § 1361 or otherwise.[4] Therefore, the Court will grant Respondents' Motion to Dismiss the claims against the USCIS Director for lack of subject matter jurisdiction.

### B. Failure to State a Claim

Respondents suggest that mandamus relief in inappropriate here because Petitioner has an adequate remedy under the Administrative Procedure Act ("APA"). (Dkt. No. 7 at 13-14). The Third Circuit has stated that when the APA can provide relief, a "grant of a writ of mandamus would be improper." *Stehney v. Perry*, 101 F.3d 925, 934 (3d Cir. 1996).[5]

Whether under the APA or as a writ of mandamus, courts have construed the relief requested to be the same. *See Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986) (suit seeking a writ of mandamus is *"in essence"* a suit under the APA); *Carpet, Linoleum & Resilient Tile Layers, etc. v. Brown*, 656 F.2d 564, 566-567 (10th Cir. 1981) ("[W]hether we label the relief sought as mandamus or as mandatory injunction [under the

---

[4] For the same reason, there is no basis for injunctive relief under the Administrative Procedure Act.

[5] In evaluating a petitioner's entitlement to mandamus relief under 28 U.S.C. § 1361 when based on the availability of alternative remedies, a panel of the Third Circuit has opined that Rule 12(b)(6), not Rule 12(b)(1), was the "appropriate" rule. *Charlton v. Comm'r*, 611 Fed. App'x 91, 95 & n.3 (3d Cir. 2015) (affirming district court's dismissal of petition for writ of mandamus when petitioner could not "establish an entitlement to mandamus relief, because he cannot show that he has no other remedy at law," but stating that dismissal was appropriate under Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P 12(b)(1)). The Court will therefore evaluate Petitioner's entitlement to mandamus relief in light of the availability of potential relief under the APA under Fed. R. Civ. P. 12(b)(6).

APA], the issue remaining is whether defendants here have failed to discharge a duty owed to plaintiffs which Congress has directed them to perform."); *Litvin v. Chertoff*, 586 F. Supp. 2d 9, 11 (D. Mass. 2008) ("[C]ourts have construed the APA and the mandamus statute to be coextensive.").

The APA provides a right of judicial review for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" and waives sovereign immunity for an action "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702.[6] The APA permits review of "final agency action," 5 U.S.C. § 704, and allows a court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or]. . . without observance of procedure required by law." 5 U.S.C. § 706(2)(A) and (D). It applies "except to the extent that— (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law," 5 U.S.C. § 701(a). In short, "[t]o support APA jurisdiction, the agency action must be final, it must adversely affect the

---

[6] Whether Petitioner meets the judicial review requirements under the APA is not a question of subject matter jurisdiction, but instead whether Petitioner has stated a claim for relief. *See Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 399 (3d Cir. 2012) ("[T]he judicial review provisions of the APA such as section 704, are not jurisdictional, but rather 'provide a limited cause of action for parties adversely affected by agency action.'") (quoting *Chehazeh v. Attorney Gen. of the United States,* 666 F.3d 118, 125 n.11 (3d Cir. 2012)); *Chehazeh*, 666 F.3d at 125, n.11 ("[E]ven if Congress has committed discretion to the [agency] by law to take or not take certain actions, it has not deprived the District Court or us of jurisdiction to consider a plaintiff's claim that such action was erroneous pursuant to the APA. The question is whether a plaintiff can *state a claim for relief* from such action under the APA.") (emphasis added). While the APA does not provide an independent basis for subject matter jurisdiction, "the 'federal question' statute, 28 U.S.C. § 1331, 'confer[s] jurisdiction on federal courts to review agency action.'" *Chehazeh*, 666 F.3d at 125 n. 11 (quoting *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

party seeking review, and it must be non-discretionary." *Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005).

In order to be considered final agency action, "[f]irst, the action must mark the consummation of the agency's decisionmaking process. . . . And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997) (internal citations and quotations omitted). In the case at bar, 19 C.F.R. §§ 122.187(c)-(f) lay out the procedural steps on appeal after an access seal is revoked. Regardless of whether a hearing is held, a written decision on an appeal rendered by the director of field operations "constitute[s] the final administrative action on the matter." 19 C.F.R. §§ 122.187(c) and (f). Therefore, the June 3, 2016 letter from the Director of Field Operations upholding the CBP Port Director's revocation and denying Petitioner's request to conduct a hearing (Dkt. No. 1-6) constituted final agency action. This action is clearly one that completed the agency's decision-making process and determined Petitioner's rights, given that there is no further appeal under the regulations. Indeed, the letter itself acknowledges that it constitutes final agency action in stating: "This is the final administrative action as to the revocation." *Id.* In addition, the decision finalizing Petitioner's access seal revocation and denying him a hearing is one by which Petitioner's right to have an access seal has been determined.

Further, the Court finds no underlying statute that prohibits judicial review. While Respondents argue that the decision to revoke Petitioner's access seal as well as the decision to deny a hearing were decisions committed to the agency's discretion (Dkt. No. 7 at 12-13), the Court has found, as discussed above, that there are non-discretionary procedural duties that it is authorized to enforce.

In short, because the Petitioner can pursue his claim for relief under the APA, the Court finds that mandamus relief is inappropriate. *See Stehney*, 101 F.3d at 934 ("[The plaintiff] could have challenged NSA's alleged violations of her constitutional rights or NSA's failure to follow its own regulations under the Administrative Procedure Act. . . . Since this alternative was available to [the plaintiff], grant of a writ of mandamus would be improper."); *Jian Chun Shi v. Napolitano*, No. 09-cv-4608, 2009 U.S. Dist. LEXIS 114722, at *11-12 (E.D. Pa. Dec. 7, 2009) ("Given that the APA provides a remedy that is virtually identical to that provided by a writ of mandamus, Plaintiff cannot demonstrate that there is no other adequate remedy available to him. . . . [B]ecause Plaintiff has adequate alternative remedies, he does not qualify for mandamus relief at the present time.").[7] Accordingly, Respondents' Motion to Dismiss will be granted.

Although the Court will grant the Motion to Dismiss, it will provide Petitioner the opportunity to amend his Petition in order to add APA claims against Respondent CBP Port Director. The Court finds that the opportunity to amend the Petition in this matter is appropriate, especially in light of Respondents' concession that "Petitioner has an adequate remedy pursuant to the APA" (Dkt. No. 7 at 14) and the Third Circuit's preference that courts allow amendment in order to resolve matters on the merits. *See Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) ("This liberal amendment regime helps effectuate the 'general policy embodied in the Federal

---

[7] Respondents note that "[i]t is well-established that the United States cannot be sued except as it has waived its sovereign immunity and consents to be sued." (Dkt. No. 7 at 11). But sovereign immunity is not a bar to challenging agency action in failing to abide by its own regulations. *See Stehney*, 101 F.3d at 932-33 (relying on the *Accardi* line of Supreme Court cases, noting that "the Supreme Court held that the government could be sued for failure to follow its own regulations" and holding further that the APA provides an applicable waiver of sovereign immunity under 5 U.S.C. § 702); *Treasurer of New Jersey*, 684 F.3d at 397 (following the "opinions of several courts of appeals that have clarified that the waiver of sovereign immunity in section 702 extends to all non-monetary claims against federal agencies and their officers, regardless of whether or not the cases [otherwise meet the requirements of section 704]").

Rules favoring resolution of cases on their merits.'") (quoting *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987)).

      **C.     Insufficient Process and Insufficient Service of Process**

Respondents argue that this case should be dismissed because Petitioner failed to comply with Fed. R. Civ. P. 4(i) in that he "was required to serve the United States by completing the service of summons and complaint on the United States Attorney for the District of the Virgin Islands, and to forward by registered or certified mail, copies of the summons and the complaint, to the Attorney General of the United States," but failed to do so within 90 days. (Dkt. No. 7 at 18-19).

To sue a federal agency or officer in his official capacity, Fed. R. Civ. P. 4(i)(2) requires that the United States be served with process.[8] In order to serve the United States, a party must:

> (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i)(1).

Petitioner acknowledges that he failed to comply with Fed. R. Civ. P. 4(i) in that he did not properly serve the United States. (Dkt. Nos. 12 at 10; 11 at 1). After Respondents' Motion to

---

[8] Fed. R. Civ. P. 4(i)(2) states in full: "To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee." The CBP Port Director was served with process on July 27, 2017. (Dkt. No. 7 at 2 n.1; Dkt. No. 14). Because the Court is dismissing the claims against the USCIS Director, it will not address whether the USCIS Director was properly served.

18

Dismiss was filed, he moved for an extension of time of 21 days to serve the United States. (Dkt. No. 11). Petitioner then served the Acting United States Attorney for the Virgin Islands on February 6, 2018. (Dkt. No. 16).

Petitioner argues that there is good cause to excuse his delay in serving the United States Attorney given the burden on practicing law in the Virgin Islands in the wake of Hurricanes Irma and Maria in 2017 when this case commenced. (Dkt. No. 11 at 2). Additionally, he states that there is no prejudice to Respondents given their knowledge of the subject matter of this case for several years. *Id.* at 1. Respondents did not file an opposition to Petitioner's Motion for Extension of Time.

Courts consider three factors in determining good cause: (1) the reasonableness of the plaintiff's efforts to effect service; (2) prejudice to the defendant because of untimely service; (3) whether the plaintiff has moved for an enlargement of time. *See MCI Telecomms. Corp.*, 71 F.3d at 1097 (citing *United States v. Nuttall*, 122 F.R.D. 163, 166-67 (D. Del. 1988)). Respondents have not demonstrated any prejudice that they have suffered on account of Petitioner's untimely service and, indeed, have not filed any opposition to Petitioner's Motion for Extension of Time. Additionally, Petitioner moved for an enlargement of time to correct his failure. Given the significant disruption in the Virgin Islands caused by Hurricanes Irma and Maria, the Court finds that there is good cause to grant Petitioner's Motion for Extension of Time *nunc pro tunc*, and shall excuse the delay in serving the United States Attorney for the District of the Virgin Islands.

After serving the United States Attorney, Petitioner filed a notice with the Court stating that he "has served Respondents as required under the Rules." (Dkt. No. 17 at 1). Although Petitioner submitted evidence that he served the United States Attorney (Dkt. No. 16), there is no evidence on the record that Petitioner has fulfilled Fed. R. Civ. P. 4(i)(1)(B), by "send[ing] a

copy of [the summons and complaint] by registered or certified mail to the Attorney General of the United States at Washington, D.C." *See Gish v. AG United States*, 604 Fed. App'x 119, 120 (3d Cir. 2015) ("In order to serve the United States, a party must do two things. First, she must deliver a copy of the summons and complaint to the U.S. Attorney for the district where the action is brought. . . . Second, the party must send a copy of the summons and complaint to the Attorney General in Washington, D.C.") (internal citations omitted).

Rule 4(i)(4) of the Federal Rules of Civil Procedure states that "[t]he court must allow a party a reasonable time to cure its failure to: (A) serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States." Having served the United States Attorney, the Court will grant the Petitioner additional time to serve the Attorney General in compliance with Fed. R. Civ. P. 4(i)(1)(B), and to file a notice of such compliance with the Court.

### IV. CONCLUSION

For the reasons stated above, the Court will grant Respondent's Motion to Dismiss as to Respondent USCIS Director for lack of subject matter jurisdiction, and grant the Motion to Dismiss as to Respondent CBP Port Director for failure to state a claim. However, the Court will allow Petitioner an opportunity to amend his Petition as to Respondent CBP Port Director to assert claims under the APA. Additionally, the Court will grant *nunc pro tunc* Petitioner's Motion for Extension of Time to Serve the United States.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 31, 2021          _____/s/_____
                                                               WILMA A. LEWIS
                                                               Chief Judge